**UNITED STATES of America**

v.

**Letatia BARRETT**

and

**Michael McCalla.**

**Crim. No. 89–0168.**

United States District Court, District of Columbia.

Aug. 17, 1989.

---

James G. Cowles, Jr., Asst. U.S. Atty., for U.S.

Mona Asiner, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case comes before the court on the motions of defendants Letatia Barrett and Michael McCalla to suppress evidence and statements obtained during the execution of a search warrant at an apartment occupied by defendant Barrett.

Defendant Barrett moves to suppress all evidence seized from the execution of the search warrant on the basis that the Metropolitan Police Department ("MPD") officers executing the warrant forced entry into the apartment in violation of 18 U.S.C. § 3109. As a result, defendant claims that the method of execution of the search warrant was illegal and any evidence seized must be suppressed.

Defendant McCalla moves to suppress statements he made to MPD Officer Nitz shortly after the officers entered the apartment. McCalla alleges that after the police arrested him and before they read him his *Miranda* rights, they asked him a series of questions. McCalla maintains that his answers to those questions should be suppressed on the basis that they were taken before he was apprised of his *Miranda* rights.

## FINDINGS OF FACT

Among the witnesses presented by the government, the court heard and credits the testimony of Officer Nitz, who has been a member of the Metropolitan Police Department for six years. Defendants did not offer any testimony during the hearing.

On April 12, 1989, two undercover MPD officers went to Apartment 204B, 2620 B 13th Street, N.W. The person who answered the door was later identified as defendant Deon Martin, A.K.A. Joseph Robinson. He told the undercover officers that the lessee of the apartment, Letatia Barrett, was in the shower and that he would help them. Mr. Martin sold the officers three bags of cocaine base.

As a result of the April 12 purchase, officers of the Third District Vice Unit obtained a District of Columbia Superior Court search warrant for the apartment. The validity of the search warrant is uncontested. On Saturday, April 22, 1989, at approximately 4:30 pm, members of the MPD Drug Enforcement Unit arrived at Apartment 204B to execute the search warrant.

According to his testimony and as reenacted in court, Officer Nitz approached the door of the apartment, pounded the door four times, and announced in a loud tone his authority and purpose: "Police, search warrant, open up." Officer Nitz then bent down toward the door to listen for movement inside the apartment. He heard what he described as hurried footsteps moving from the right to the left of the apartment,

across and then away from the door. Upon hearing footsteps, Officer Nitz stood up and stepped back. After a short moment Officer Nitz and a second officer rammed the door open. Members of the unit then entered the apartment, with officer Nitz following them. Officer Nitz estimated the period between his announcement and entry to be between five and ten seconds. The time between announcement and "entry" in the courtroom reenactment was approximately eight seconds.

Officer Nitz walked into the kitchen area where another officer had secured defendant McCalla on the kitchen floor. Officer Nitz verbally advised defendant McCalla of his *Miranda* rights and asked whether McCalla understood his rights. The officer testified that McCalla responded that he did understand his rights.

Officer Nitz testified that after he had read the defendant his rights, he retrieved a plastic bag containing rock cocaine lying on the floor to the right of the defendant. When he questioned defendant McCalla about the cocaine, McCalla replied that he had paid fifty dollars for it and had "just bought it and was going to smoke it."

## CONCLUSIONS OF LAW

■ Under 18 U.S.C. § 3109, police officers must announce their authority and purpose and be refused admittance before forcing entry into a premises. It is apparent from the testimony of Officer Nitz that he did announce his authority and purpose before entering the apartment. The question thus presented is whether the police waited long enough to have been constructively "refused admittance" before forcing their way into the apartment. This issue was recently addressed by this circuit in *United States v. Bonner*, 874 F.2d 822 (D.C.Cir.1989). Judge Starr, writing for the majority, noted that " 'refused admittance' is not restricted to an affirmative refusal, but encompasses circumstances that constitute constructive or reasonably inferred refusal." *Id.* at 824 (citation omitted). The *Bonner* majority specifically rejected a mechanistic time standard and instead applied a test that considered all the pertinent circumstances surrounding the execution of the warrant.

In *Bonner*, the search warrant was supported by a description of a controlled narcotics purchase made from the apartment and by information from a reliable informant that cocaine was being sold from the apartment. Six police officers went to the apartment to execute the warrant. An officer knocked three times on the door of the apartment and announced "Police officers, open up, we have a search warrant." After a pause, the process was repeated. The officer then heard a sound he described as footsteps running from the door, and ordered that the door be forced open. The police quickly opened the door and entered the apartment.

The trial court denied defendants' motion to suppress the evidence collected in the execution of the warrant and the Court of Appeals affirmed, finding that the officers were constructively refused admittance and that exigent circumstances justified their forced entry into the apartment.

The Court of Appeals in *Bonner* considered a number of factors in making its determination that the officers were constructively refused admittance. Each of those factors is present here.

First, the MPD officers in *Bonner* "were searching for drugs and other incidents of drug trafficking," evidence characteristically susceptible to rapid destruction. *Id.* The officers in the instant case were also searching for these materials.

Second, in this case, as in *Bonner*, the officers had a reasonable expectation that "they were entering into a den of drug traffickers," and that they were at substantial risk because of the high incidence of violence that often accompanies drug trafficking. Accordingly, police officers cannot dawdle or leisurely stand around and wait an undue length of time for someone to open the door. They likely could have been met with gunfire or the loss of the contraband that was the object of the search if they did not act with prudence. Indeed, in the instant case a gun was found in the premises.

Third, the warrant process in *Bonner*, as in this case, tested and confirmed the information that drug sales were being conducted in the premises. Moreover, the information relied upon to obtain the search warrant in this case included the actual purchase of crack cocaine from the apartment by MPD undercover officers, an important factor not present in *Bonner*.

Fourth, the officers here clearly announced their authority and purpose. The testimony offered at the hearing indicated that the announcement was both loud and clear. There were four loud bangs on the door, which were followed by officer Nitz's announcement. Since the officers executed the warrant at 4:30 in the afternoon, it is unlikely that those present in the apartment were in bed and did not hear or could not in some manner, either verbal or otherwise, respond to the announcement.

Fifth, shortly after the announcement, officer Nitz heard footsteps moving quickly across and then away from the front door. "When conducting a search for evidence that [can be] readily destroyed, officers may resolve the ambiguity of a noise from within the place to be searched in a manner consistent with executing the warrant safely and successfully." *Id.* at 825 (citing *United States v. Allende*, 486 F.2d 1351, 1353 (9th Cir.1973)). In this case, Officer Nitz clearly heard sounds that could be interpreted as people in the apartment refusing entry and taking action to dispose of the drugs.

While the officers did not stand around and wait for admittance as if they were door-to-door vendors, they did wait an appreciable and prudent amount of time after announcing their authority and purpose and before entering Apartment 204B. Given the presence of the foregoing factors, particularly firsthand information that the apartment was being used as a drug boutique and the sound of hurried footsteps away from the front door, indicating that someone had heard the announcement and did not intend to respond, it was reasonable for the officers to assume that they had been refused admittance. *Cf., e.g., United States v. Ruminer*, 786 F.2d 381 (10th Cir.

1986) (officers' entrance through front door of dwelling, after a five to ten second delay and upon hearing commotion in dwelling held reasonable).

 The facts in this case clearly support the finding that exigent circumstances existed to justify the officers' forced entrance. The possibility of the destruction of evidence and the apparent danger to the entering officers are the two salient factors that bolster this finding. The exigent circumstances were evident even before the officers announced their authority and purpose, and became only more evident after the announcement and the sound of footsteps behind the door. Furthermore, the footsteps heard by officer Nitz could reasonably be interpreted as an attempt to refuse entry or as someone in the process of destroying evidence. Accordingly, this court finds the exigencies in this case fully justify the officers' conduct.

With regard to defendant McCalla's denial through his counsel that he was read his *Miranda* rights before being questioned, this court credits the testimony of officer Nitz that defendant was timely informed of his rights. Since defendant McCalla did not take the stand to contradict officer Nitz's testimony, there is nothing in the record to support the position defendant wants the court to adopt. A lawyer's naked espousement of the accused's position is not evidence and cannot negate the credible and uncontroverted testimony of a police officer. As a result, the court finds that defendant McCalla's statements were legally obtained.

Upon consideration of defendants' motions to suppress, the government's opposition thereto, and the hearing held before this court, it is

ORDERED that defendants Barrett and McCalla's motions to suppress be and hereby are DENIED.